UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARVEY H. LYONS, JR.,<br><br>               Petitioner,<br><br>     v.<br><br>AL HERRERA, WARDEN, and UNITED STATES PAROLE COMMISSION<br><br>               Respondents. | CV 03-8006 SVW (AJW)<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |

    The Court has reviewed the entire record in this action, the Report and Recommendation of the Magistrate Judge, and petitioner's objections.

In addition to the thorough reasoning offered by the Magistrate Judge, the Court wishes to summarize and clarify the legal effect of the Parole Commission's actions when lodging and executing the parole violator warrant.

The Court concurs with Magistrate Judge's summary of the relevant events involving the parole violator warrant:

> On September 9, 1998, upon notice and proof of petitioner's conviction, the [Parole] Commission issued a parole violator warrant for petitioner. The warrant was addressed to the United States Marshal. The transmittal letter accompanying the warrant stated: "Please assume custody as soon as possible or when located. NOTE: If the parolee is already in the custody of federal or state authorities, do no execute this warrant. Place a detainer and notify the Commission for further instructions. Do not execute the warrant if the parolee is on bond."
>
> In spite of these instructions, on March 10, 1999, while petitioner was on bond and awaiting sentencing in this Court, the Marshal arrested and detained petitioner on the parole violator warrant. Petitioner subsequently requested presentence detention at Metropolitan Detention Center and an order exonerating bond. Those requests were granted. Petitioner remained in custody pending his sentencing. Although steps toward scheduling a parole revocation hearing appear to have been taken after his arrest, petitioner requested that his parole revocation hearing be continued pending his sentencing. The [Parole] Commission concurred. Revocation proceedings did not re-commence until after petitioner was sentenced in this Court.

After his arrest on the parole violator warrant, all indications from the Commission – up through its March 2004 notice – were that the parole violator warrant was properly executed on March 10, 1999. Petitioner was told as much as recently as July 1, 2003.

After petitioner's parole revocation hearing however, on March 2, 2004, the Commission ordered the following action:

> Release, *nunc pro tunc*, from the custody of the Commission's warrant dated September 9, 1998 and conditionally reinstate to supervision, file the warrant as a detainer during your service of the 40-month SRA term imposed on December 10, 2001, and execute the Commission's warrant upon your release from the 40-month SRA term, which the Commission believes to be approximately December 24, 2001. This will result in the running of your parole violator term consecutively to your 40-month SRA term.

The Commission's order justified that action as follows:

> The Commission's warrant was executed by the U.S. Marshal on March 10, 1999, contrary to the Commission's explicit instructions. You had pleaded guilty and were in the community on bond when the warrant was executed, and the Commission's instructions accompanying the warrant were: "Do not execute the warrant if the parolee is released on bond." It was the Commission's intention that its warrant not be executed until after the service of your new sentence.

The Commission's order further stated that "[t]he above decision is not appealable."

3

1  (Report and Recommendation at 47-48, citations omitted.)

2  It is well-established that the Parole Commission has broad
3  discretion to determine whether to issue a parole violator warrant and
4  to order either that the warrant "be executed or be filed as a
5  detainer." Barnard v. Henman, 89 F.3d 373, 377 (7th Cir. 1996)
6  (quoting McConnell v. Martin, 896 F.2d 441, 446 (10th Cir. 1990)); see
7  also Thompson v. Crabtree, 82 F.3d 312, 316 (9th Cir. 1996) (noting the
8  Parole Commission's "broad discretion vested in the Commission by
9  Congress in issuing, executing, and administering warrants").

10  When the Parole Commission exercises its discretionary authority,
11  federal courts may not "review such a discretionary act by the
12  Commission other than to consider whether the decision was so arbitrary
13  or capricious as to violate due process." Benny v. United States
14  Commission, 295 F.3d 977, 985 (9th Cir. 2002).

15  In contrast to the Parole Commission's discretion to decide how to
16  issue a parole violator warrant, the United States Marshal has no
17  discretion to violate the Parole Commission's instructions when
18  executing the warrant. Barnard, 89 F.3d at 377; Chandler v.
19  Barncastle, 919 F.2d 23, 27 (5th Cir. 1990); McConnell, 896 F.2d at
20  446. Accordingly, when a parole violator "warrant [i]s executed
21  contrary to the [Parole] Commission's instructions, the execution [is]
22  invalid." Johnson v. Reilly, 349 F.3d 1149, 1154 (9th Cir. 2003)
23  (citing United States v. Cox, 475 F.2d 837, 839-40 (9th Cir. 1973)).

24  An invalidly executed warrant remains legally effective and may be
25  re-executed at a later time.[1] The Parole Commission may re-lodge the

---

[1] The contrary rule is that if a parole violator warrant is **validly** executed, the Parole Commission may not thereafter withdraw it and lodge it as a detainer. Thompson v. Crabtree, 82 F.3d 312, 315-16

4

invalidly executed warrant as a detainer. <u>Barnard</u>, 89 F.3d at 378; <u>Chandler</u>, 919 F.2d at 27. The Parole Commission may also withdraw an invalidly executed and replace it with a newly issued warrant. <u>McConnell</u>, 896 F.2d at 446 & n.9. Ultimately, the Parole Commission retains discretion to decide how to follow up on an invalidly executed warrant, and its decision to use one procedure rather than another is generally insignificant. <u>Thigpen v. U.S. Parole Commission</u>, 707 F.2d 973, 977 (7th Cir. 1983) ("the withdrawal and reissuance of the old warrant instead of the issuance of an identical new warrant is surely an inconsequential difference of form"); <u>Barnard</u>, 89 F.3d at 377 n.8.

Because the Parole Commission's September 9, 1998 parole violator warrant was invalidly executed when the Marshal arrested Petitioner in contravention of the warrant's clear instructions, the Parole Commission retained discretion regarding how to execute the warrant in the future. The caselaw is clear that the Parole Commission retained discretion to issue a new warrant, <u>McConnell</u>, 896 F.2d at 446 & n.9, or replace the existing warrant as a detainer, <u>Barnard</u>, 89 F.3d at 378; <u>Chandler</u>, 919 F.2d at 27. The Parole Commission elected to use an alternative procedure that is effectively the same as either of those options: it issued a *nunc pro tunc* order that retroactively placed the warrant as a detainer and executed it upon Petitioner's release from prison. The practical effect of the *nunc pro tunc* order was to extend Petitioner's parole term without affecting the length of his prison

---

(9th Cir. 1996); <u>see also</u> <u>Vershish v. United States Parole Commission</u>, 405 F.3d 385, 389 (6th Cir. 2005); <u>Donn v. Baer</u>, 828 F.2d 487, 490 (8th Cir. 1987); <u>Still v. United States Marshal</u>, 780 F.2d 848, 851 (10th Cir. 1985); <u>but see</u> <u>Thigpen v. United States Parole Commission</u>, 707 F.2d 973 (7th Cir. 1983) (holding that Parole Commission **may** withdraw validly executed warrant and lodge it as a detainer); <u>Franklin v. Fenton</u>, 642 F.2d 760 (3d Cir. 1980) (same).

term.  The legal effect of the *nunc pro tunc* order was to cause the Parole Commission's original instructions to be properly implemented in the manner that they should have been implemented in the first place.

The purpose of a *nunc pro tunc* order is to "correct clerical or ministerial errors."  <u>Singh v. Mukasey</u>, 533 F.3d 1103, 1110 (9th Cir. 2008) (quoting <u>Transamerica Ins. Co. v. South</u>, 975 F.2d 321, 325 (7th Cir. 1992)).  Here, the United States Marshal committed a ministerial error when it was carrying out the non-discretionary act of executing the Parole Commission's warrant.  See <u>Black's Law Dictionary</u> 28, 1045 (9th ed. 2009) (defining "ministerial act" as "[a]n act performed without the independent exercise of discretion or judgment").  The Parole Commission was therefore justified in exercising its discretion to issue a *nunc pro tunc* order to correct the Marshal's clear violation of its non-discretionary instructions.  See <u>Thigpen</u>, 707 F.2d at 977 (Parole Commission's decision regarding re-execution of warrant is "an inconsequential difference of form"); <u>Barnard</u>, 89 F.3d at 377 n.8 (same).  The caselaw also establishes that the Parole Commission has the power to issue *nunc pro tunc* orders, see <u>Benny</u>, 295 F.3d at 986-87 (Parole Commission authorized to issue *nunc pro tunc* order to correct clerical errors in parole certificate), and that due process is not offended if a *nunc pro tunc* order is issued five-and-a-half years after the erroneous ministerial action took place, see <u>United States v. Inocencio</u>, 328 F.3d 1207, 1210-11 (9th Cir. 2003) (no due process violation where court issued *nunc pro tunc* order revoking alien's

///

///

///

1  naturalization, where erroneous action occurred five years earlier).
2      Having re-stated and clarified these points, the Court concurs
3  with and adopts the findings of fact, conclusions of law, and
4  recommendations contained in the Report after having made a <u>de</u> <u>novo</u>
5  determination of the portions to which objections were directed.

7      IT IS SO ORDERED.

10 DATED:   June 16, 2010

11                                    STEPHEN V. WILSON
12                                    UNITED STATES DISTRICT JUDGE

7